# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### DOCKET NO. 3:08-cr-00617-W

| | | |
|---|---|---|
| **BARNHARDT MANUFACTURING COMPANY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **ORDER** |
| **vs.** | ) | |
| | ) | |
| **ILLINOIS TOOL WORKS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

THE MATTER is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 8), which has been fully briefed by the parties (Docs. Nos. 13, 16) and is now ripe for review. Defendant Illinois Tool Works, Inc., moves to dismiss the case on the basis that an actual controversy between the parties no longer exists. For the reasons that follow, the Motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant Illinois Tool Works, Inc., holds U.S Patent No. 5,890,327 ("'327 Patent") entitled "METHOD OF REINFORCING THE ROOF OF A BUILDING AGAINST HURRICANE-FORCE WINDS." (Resp. in Opp'n to Mot. to Dismiss, Doc. No. 13, Exhibit 3, p. 1). In June 2008, Defendant, through its counsel, sent correspondence to Plaintiff Barnhardt Manufacturing Company that suggested Plaintiff was infringing on the '327 Patent and requesting that Plaintiff cease all infringing activities. On November 26, 2008, Defendant sent a letter demanding that Plaintiff "immediately cease and desist from selling or marketing any products or services, or inducing others to provide such products or services, for reinforcing and securing the roof of a building against

highspeed wind forces as claimed in the '327 Patent." (Id., Exhibit 1, p. 1). Plaintiff subsequently

filed this declaratory judgment action on December 31, 2008, seeking orders of non-infringement,

invalidity, and uneforceability with respect to the '327 Patent held by Defendant. Following service

of the Complaint on Defendant on April 9, 2009 (Doc. No. 5), the parties engaged in settlement

discussions but were unable to reach an agreement. On May 18, 2009, Defendant's counsel sent a

letter to counsel for Plaintiff that stated the following:

> ITW covenants not to sue Barnhardt and its subsidiary, North Carolina Foal
> Industries, Inc., ("NCFI") for infringement of the '327 patent with respect to any
> closed-cell polyurethane foam product . . . currently advertised, manufactured,
> imported, marketed or sold by Barnhardt and/or NCFI, or any closed-cell
> polyurethane product which was advertised, manufactured, imported, marketed or
> sold by Barnhardt and/or NCFI prior to the date of this letter.

(Id., Exhibit 7). In its letter, Defendant contends that the "covenant not to sue" contained therein

divests this Court of subject matter jurisdiction and requests that Plaintiff voluntarily dismiss this

lawsuit. Plaintiff immediately responded to Defendant's letter, which Plaintiff referred to as a

"proposal for a covenant not to sue," and objected on several grounds, but mainly arguing that the

covenant was not comprehensive enough to satisfy Plaintiff's concerns regarding the infringement

issues. (Id. Exhibit 8). Subsequently, Defendant filed the instant motion to dismiss the lawsuit on

the grounds that its covenant not to sue divests this Court of jurisdiction. In its motion to dismiss,

Defendant provided a somewhat broader covenant not to sue that specifically promised the

following:

> ITW covenants not to sue Barnhardt or NCFI for infringement of the '327 patent with
> respect to *any product or service* currently advertised, imported,
> marketed or sold by Barnhardt and/or NCFI, or *any product or service* which was
> advertised, manufactured, imported, marketed or sold by Barnhardt and/or NCFI
> prior to the date of this motion.

(Def. Mot. to Dismiss, Doc. No. 9, p. 6 n.3) (emphasis in original).  Because this covenant is more comprehensive in scope than the covenant not to sue contained in the May 2009 letter, the Court will consider the later covenant as the controlling covenant for purposes of its analysis here.

## ANALYSIS

Defendant contends its promises contained in its letter and the instant motion completely resolve the dispute between the parties so as to remove subject matter jurisdiction.  Plaintiff contends that Defendant's covenant not to sue does not cover future acts and, therefore, does not fully resolve all of the issues, thus indicating an actual case or controversy still exists.[1]

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  It is well-settled that "the phrase 'case or actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III [of the Constitution]." MedImmune, Inc. v. Genetech, Inc., 549 U.S. 118, 127 (2007) (citing Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937)).  In MedImmune, the Supreme Court somewhat changed the "reasonable apprehension of suit" test, which had previously been the standard applied by the courts, and  explaining  that  "the  question  in  each  case  is  whether  the  facts  alleged,  under  all  the

---

[1]Notably, neither party has raised the "acceptance" issue grounded in basic contract law, although here it is undisputed that Plaintiff never accepted Defendant's covenant.  The courts, however, do not seem to require the alleged infringing party to accept an unconditional covenant not to sue because no discussion of acceptance is included in the leading patent cases governing covenants not to sue, which are discussed further below.  Instead, courts consider whether the unconditional covenant not to sue was filed with the court.  See Mobil Oil Corp. v. Advanced Environmental Recycling Tech., Inc., 826 F. Supp. 112, 114 (D.Del. 1993) (noting that covenant not to sue had not been filed with the court so as to remove reasonable apprehension of litigation)(citing Spectronics Corp. v. H.B. Fuller Co., Inc., 940 F.2d 631, 633 (Fed.Cir.1991) (discussing covenant not to sue filed with district court), abrogated on other grounds by Liquid Dynamics Corp. v. Vaughan Co., Inc., 355 F.3d 1361 (Fed.Cir. 2004)).  Thus, because the instant covenant was filed with the Court in Defendant's motion, this "requirement" (to the extent one exists) is satisfied.

circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." 549 U.S. at 127 (quoting Md. Cas. Co. v. Pac. Coal & Oil., Co., 312 U.S. 270, 273 (1941)). Following the totality-of-the-circumstances test set forth in MedImmune, the Court of Appeals for the Federal Circuit has explained that declaratory judgment jurisdiction is satisfied when the patent holder "asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity . . . ." SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1381 (Fed. Cir. 2007). To the contrary, "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." Id. at 1380-81.

In order to determine whether a covenant not to sue will divest the court of jurisdiction, the Court must analyze the specific terms of the covenant. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294 (Fed. Cir. 2009). A covenant that does not cover all aspects of a dispute, e.g., future acts, does not necessarily deprive the court of jurisdiction. In Revolution Eyewear, the Federal Circuit explained the difference between a covenant that extended to future production and sale of the same products that were the subject of the infringement suit as compared to a covenant that did not extend to future sales of the same product as previously sold. 556 F.3d 1298. In the first instance, the covenant removed an actual controversy because the continuing activities were never going to be subject to an infringement suit. Id. (citing Super Sack Manufacturing Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir.1995); Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340 (Fed. Cir. 2007)). However, in the later instance, there was an actual controversy because the

covenant did not promise not to sue for future production and sale of the alleged infringing products that existed at the time of suit. The <u>Revolution Eyewear</u> court summarized the main difference between case law finding or declining to find a case or controversy:

> In all of these cases, the covenants covered the current products whether they were produced and sold before or after the covenant, and the courts found absence of continuing case or controversy. In contrast, Revolution offered no covenant on the current products, stating that it is not obligated to repudiate suit for future infringement.

556 F.3d at 1300. As such, the court concluded that an infringement suit was possible based on the future, continuing activities concerning current products, and therefore, subject matter jurisdiction for the declaratory judgment action existed.

These cases, while providing guidance to this Court, only solve part of the puzzle. The parties appear to agree that the most recent unconditional covenant not to sue provided by Defendant covers past and future sales of current or past products or services that relate to the '327 patent. Under the relevant authority discussed herein, the covenant not to sue thus resolves any case or controversy related to existing or past alleged infringing products or services currently or previously advertised, manufactured, imported, marketed, or sold by Plaintiff as of the date of Defendant's motion. Accordingly, the Court does not have subject matter jurisdiction over Plaintiff's declaratory judgment action as it relates to past, current, or future advertising, manufacturing, marketing or sales of any product or service currently or previously in the marketplace.

The covenant, however, does *not* extend to future products or services that Plaintiff has not or is not currently using but *may* develop and place in the marketplace at a future time period based on the '327 patent. Thus, the Court's inquiry turns to whether, based on the totality of the circumstances, there is an actual controversy surrounding this future, potential infringement.

Plaintiff contends that the possibility of future products and services were contemplated as potential infringement by Defendant and part of the subject matter of Defendant's initial cease-and-desist letter. Such statements, according to Plaintiff, demonstrate Defendant's willingness to sue as it relates to the '327 patent and therefore indicates an actual controversy even as to such future activity. The Court, however, is unconvinced that such activity rises to the level of MedImmune's required "sufficient immediacy and reality." 549 U.S. at 127. Instead, it appears that Plaintiff seeks an advisory opinion regarding possible infringement on products or services not yet in the marketplace and not yet identified by Plaintiff with any specificity. This request is something this Court cannot grant based on the limited facts as they exist now, because, to some extent, Plaintiff is seeking absolute immunity forever for anything in relation to the '327 patent.

The exact nature of these future products or services, be they theoretical or in design-only, is unclear to the Court at this initial stage in the litigation . As stated in MedImmune and its progeny, it is not necessary for a party to actually infringe a patent before seeking a declaration of rights. Justice Scalia aptly explained that "the rule that a plaintiff must . . . bet the farm . . . before seeking a declaration of its actively contested legal rights finds no support in Article III." MedImmune, 549 U.S. at 134. As such, the Court cannot foreclose the possibility that an actual controversy might exist as to any future products or services.

Accordingly, the Court will deny Defendant's motion in part, without prejudice to Defendant's ability to refile its motion following a brief period for jurisdictional discovery. Plaintiff, however, is cautioned that this Court will not rule on infringement or related issues regarding *speculative* products or services. The Court will allow a limited period of discovery, not to exceed forty-five (45) days, during which the parties may explore this issue of future infringement. This

time period should allow adequate time to draft discovery requests, which should be served so as to provide ample time under the Federal Rules of Civil Procedure for the parties to respond by the deadline of Monday, September 28, 2009. No extensions of time shall be granted by the Court. Following this period, Defendant may renew its motion to dismiss within fourteen (14) calendar days from the close of discovery and shall file such motion no later than Monday, October 12, 2009. Plaintiff's response shall be due within ten (10) calendar days, that is, no later than Thursday, October 22, 2009.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's motion (Doc. No. 8) is GRANTED IN PART and DENIED IN PART without prejudice to Defendant's ability to refile as to the issue of future products or services.

IT IS SO ORDERED.

Signed: August 13, 2009

Frank D. Whitney
United States District Judge