# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:08-CV-617-W

| | |
|---|---|
| BARNHARDT MANUFACTURING COMPANY, ) ) ) Plaintiff, ) ) ) vs. ) ) ILLINOIS TOOL WORKS, INC., ) ) Defendant. ) ) | ORDER |

THIS MATTER is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 19). Defendant Illinois Tool Works, Inc., moves to dismiss the case on the basis that an actual controversy between the parties no longer exists and, for Plaintiff's state law claim, that the amount in controversy does not satisfy the jurisdictional requisite under 28 U.S.C. § 1332. The motion has been fully briefed by the parties (Docs. Nos. 20, 24, and 25), and this matter is now ripe. During a status hearing on this case on March 3, 2010, the Court allowed the parties to spontaneously provide brief oral arguments to the Court on the pending motion. The Court has considered those arguments as well. For the reasons that follow, Defendant's Motion is GRANTED in part and DENIED in part.

## BACKGROUND

Defendant Illinois Tool Works Inc. holds U.S. Patent No. 5,890,327 ("'327 Patent") entitled "METHOD OF REINFORCING THE ROOF OF A BUILDING AGAINST HURRICANE-FORCE WINDS." The '327 Patent explains the method for creating and applying an adhesive foam to protect the roof of a building. Plaintiff Barnhardt Manufacturing Company

sells chemicals, which, when combined according to the method explained in the '327 Patent, create the adhesive foam described in the patent.

After receiving threats from Defendant that it would sue Plaintiff for infringement on the '327 Patent, Plaintiff filed this declaratory judgment action. Defendant subsequently tendered a covenant not to sue to Plaintiff in an attempt to completely resolve the dispute between the two parties. Plaintiff, however, refused to dismiss the action. Consequently, Defendant filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 8), which the Court granted in part and denied in part. (Doc. No. 17 ).

More detailed background relating to this matter was explained in this Court's previous order (Doc. No. 17) and is incorporated herein. Pursuant to Defendant's previously controlling covenant not to sue Plaintiff, the Court dismissed Plaintiff's declaratory judgment action in relation to past, current, and future advertising, manufacturing, marketing or sales of any product or service currently or previously in the marketplace. The Court denied the motion in part, finding Defendant's covenant not to sue was not complete. Applying the principles of the Federal Circuit's decision in <u>Revolution Eyewear</u>, the Court found that the covenant did not include refraining from suit in the event that Plaintiff's future development of products or services may infringe upon the '327 patent; therefore, the possibility of future suit between the two parties still remained. <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.</u>, 556 F.3d 1294 (Fed. Cir. 2009). The Court granted a forty-five (45) day period of limited discovery allowing the parties to explore the issue of possible future infringement.

On September 3, 2009, Defendant sent Plaintiff a letter that included a revised covenant not to sue. The revised covenant incorporates its previous promises, and also makes an additional

promise regarding the possibility of Plaintiff's future products and services development. Defendant's most recent covenant not to sue promises the following:

> ITW has decided to extend the covenant not to sue to products or services that Barnhardt may develop *in the future*. Thus, ITW covenants not to sue Barnhardt or its subsidiary, North Carolina Foam Industries ("NCFI"), for infringement of the '327 patent with respect to any product or service currently or in the past advertised, manufactured, imported, marketed or sold by Barnhardt and/or NCFI, or any product or service that Barnhardt and/or NCFI may develop and advertise, manufacture, import, market or sell in the future.[1]

(Doc. No. 19, Exhibit 1, p. 2). In the letter, Defendant maintains that this revised covenant not to sue completely divests this Court of subject matter jurisdiction and requests that Plaintiff voluntarily dismiss its Complaint. In response, Plaintiff immediately sent Defendant a letter stating that the revised covenant not to sue is again, inadequate, because the Plaintiff's concern in relation to its customers' liability is not satisfied by the revised covenant. Plaintiff's letter also addressed the other issues raised to the Court in its initial Complaint, asserting that this Court's previous Order (Doc. No. 17) did not address these remaining issues; therefore, Plaintiff asserts that the issues remain justiciable in this Court. (Doc. No. 19, Exhibit 2).

Subsequently, Defendant filed the instant renewed motion to dismiss Plaintiff's declaratory judgment suit on the grounds that its revised covenant not to sue completely divests this Court of subject matter jurisdiction. Accordingly, the Court will only consider the matter in which it has not previously decided, that is the only issue in relation to products and services the Plaintiff may develop in the future that may constitute infringement upon Defendant's '327 patent. Also before the Court is whether this Court has jurisdiction over Plaintiff's state law claim for unfair competition under N.C. Gen. Stat. § 75-1.1.

---

[1] The Court will consider Defendant's most recently revised covenant as the controlling covenant for purposes of its analysis here.

# ANALYSIS OF JURISDICTION FOR PATENT INFRINGEMENT CLAIM

The Court ruled in its previous Order that, based on Defendant's covenant not to sue as it existed at that time, the Court does not have subject matter jurisdiction over Plaintiff's declaratory judgment action as it relates to past, current or future advertising, manufacturing, marketing or sales of any product or service currently or previously in the marketplace. (Doc. No. 17). Subsequently, Defendant amended its covenant not to sue to cover any product or service that Barnhardt and/or NCFI may develop and advertise, manufacture, import, market or sell in the future. Based on this new covenant, Defendant again moves to dismiss this matter for lack of subject matter jurisdiction.

The instant motion to dismiss raises two issues, both of which focus on the question of whether a controversy exists sufficient to establish subject matter jurisdiction. The first issue is whether a controversy exists between only Plaintiff and Defendant. The second issue requires consideration of non-parties, that is, Plaintiff's customers. Plaintiff argues that even if the covenant not to sue resolves all controversy between it and Defendant directly, the covenant does not extend to Plaintiff's customers, and thus, demonstrates the existence of a controversy, albeit indirectly, between Plaintiff and Defendant. The Court will address each of these two issues in turn.

A.  **Applicable Standard of Law**

The Court's previous Order fully explained the applicable law regarding this matter; therefore, repetition is unnecessary, and the Court's analysis is fully incorporated herein. (See Doc. No. 17). In sum, the Declaratory Judgment Act provides that, "[i]n a case or controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could

be sought." 28 U.S.C. § 2201(a). The parties agree that under Supreme Court precedent provided in MedImmune Inc v. Genentech, Inc., 549 U.S. 118 (2007), courts should consider the totality of the circumstances in determining whether a controversy exists to establish subject matter jurisdiction. Consequently, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. at 127. Although the Federal Circuit has recognized that MedImmune provides for a "more lenient legal standard" to now permit an "ease of achieving declaratory judgment jurisdiction," Micron Tech. v. Mosaid Techs. Inc., 518 F.3d 897, 902 (Fed.Cir.2008), this Court must still be satisfied that the dispute is "definite and concrete, touching the legal relations having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." MedIummune, 549 U.S. at 132. Since MedImmune, the Federal Circuit has recognized that in order to find jurisdiction under the Declaratory Judgment Act in a patent case, there must be an affirmative act by the defendant related to enforcement of its patent rights, see Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1338-39 (Fed. Cir. 2008); SanDisk Corp. v. STMicroelectronics, Inc., 480 F.3d 1372, 1380-81 (Fed. Cir. 2007). Additionally, the declaratory judgment plaintiff must have undertaken "meaningful preparation to conduct potentially infringing activity." Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 879 (Fed. Cir. 2008).

**B.    Direct Controversy Between the Parties**

Turning to the first issue of whether a case or controversy exists directly between the parties, Defendant argues that its extension of the covenant not to sue eliminates any possible

question of a real and immediate case or controversy between itself and Plaintiff. Plaintiff appears to concede the first issue to some extent because Plaintiff does not argue that jurisdiction exists solely based on a direct controversy with Defendant. Nevertheless, as it relates directly to Plaintiff, the Court finds in light of the express promises contained within the covenant not to sue, Plaintiff cannot show or even forecast the possibility of an affirmative act–now or in the future– by Defendant to enforce its patent rights against Plaintiff. As such, to the extent it is contested by Plaintiff, the Court finds that based upon the revised covenant not to sue tendered by Defendant, there is no justiciable case or controversy between Plaintiff and Defendant as it relates to infringement directly between those two parties.

**C.     Controversy Based on Plaintiff's Customers**

In the second issue before the Court, which is the core of Plaintiff's opposition to the motion to dismiss, Plaintiff asserts that a live case or controversy exists because the covenant not to sue does not extend to Plaintiff's customers. It is uncontested that Defendant has engaged in several affirmative acts to show a definite and concrete dispute with Plaintiff's customers, although even Plaintiff admitted at the status conference that Defendant has not actually sued any of Plaintiff's customers. Nevertheless, it is not this part of the jurisdictional analysis explained in Prasco and SanDisk that gives the Court pause. Instead, the Court is more troubled by whether sufficient evidence shows that Plaintiff, the party asserting subject matter jurisdiction in the case at bar, has engaged in "meaningful preparation to conduct potentially infringing activity," id. through its dealings with its customers. In other words, in order to find a justiciable controversy, Plaintiff "must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed.Cir.1988)

The evidence indicates that Plaintiff sells materials that could be applied according to the '327 patent to form the foam barrier described therein. No evidence shows that Plaintiff combines the materials in accordance with the '327 patent, nor does any evidence indicate Plaintiff instructs its customers as to how to combine and/or apply the materials in accordance with the '327 patent. Thus, Plaintiff's conduct of selling non-infringing materials to its customers is insufficient, on its own, to constitute "meaningful preparation to conduct potentially infringing activity." Id.

To show a justiciable controversy, the gravamen of Plaintiff's arguments suggest, without conceding, that it might be forced to indemnify its customers for any damages its customers might pay for infringing on Defendant's patent. In support of this argument, Plaintiff acknowledges no indemnification agreements exist, but contends that even without indemnification agreements, it might still be liable under case law and the Uniform Commercial Code's provisions on warranties. Nevertheless, Plaintiff does not provide case law sufficient to prove that liability to its customers is probable and, most significantly, explicitly refuses to accept liability to its customers.

As noted above, Plaintiff has failed to produce any evidence of an indemnification agreement contained in any of the contracts with its customers. Plaintiff argues that a case or controversy exists notwithstanding the lack of indemnification agreements. Plaintiff cites the case of WS Packaging Group, Inc. v. Global Commerce Group, LLC, 505 F. Supp. 2d 561 (E.D.Wis. 2007), in support of its argument that a seller can have standing to file a declaratory judgment action where the opposing party is making threats against the seller's customers even without an indemnification agreement. In that case, the defendant tendered a covenant not to sue to the plaintiff, but continued to threaten the plaintiff's customers, including those who did not

have an indemnification agreement with the plaintiff. After considering all the circumstances, the court there found a justiciable controversy sufficient to show jurisdiction under the Declaratory Judgment Act. WS Packaging, however, is easily distinguishable. There, the plaintiff made and sold an allegedly infringing product. Here, Plaintiff neither makes nor sells an infringing product, nor does any evidence show that Plaintiff instructs its customers how to infringe upon Defendant's '327 patent using the products Plaintiff sells. In WS Packaging, the plaintiff was in the same class of alleged infringers. Here, Plaintiff, as the seller of materials, is not. Additionally, the district court in WS Packaging noted that the defendant appeared to be "using a competitor's customers as proxies to apply pressure tactics" to coerce the plaintiff into sign a licensing agreement. Id. at 566. No evidence in the case at bar suggests Defendant is attempting to target Plaintiff's customers to pressure Plaintiff to sign a licensing agreement. Finally, the WS Packaging court found jurisdiction to exist because "A favorable declaratory judgment would provide WS relief, for it would clear the air as to whether WS's game pieces infringe the '062 patent." Id. In the instant case, the Court sees no set of facts under which a declaratory judgment between these parties would clear the air as to whether Plaintiff's sale of materials infringes upon Defendant's method patent. Accordingly, the Court is unpersuaded by Plaintiff's citation of the WS Packaging case.

Instead, the Court is more persuaded by reasoning in Aralac v. Hat Corporation of America, 166 F.2d 286 (3rd Cir. 1948), as explained in Synopsys, Inc. v. Ricoh Co., Ltd., 343 F. Supp. 2d 883 (N.D. Cal. 2003), a case cited by Defendant. The Synopsys court stated:

> Several Court's have addressed this issue. In the seminal case of Aralac v. Hat Corporation of America, 166 F.2d 286 (1948), plaintiff manufactured and sold "casein fiber" to hat manufacturers and others. Defendant threatened to and, in one case, actually did file suit for infringement against several of plaintiff's customers stating that the use of casein fibers in their manufacturing process

infringed its patent. However, the Court found that there was no controversy because "[t]he invention covered by the patents [was] not per se for casein fiber but cover[ed] the process of combining such fibers with fur fibers to form hats or hat materials." Id. at 293. The Court reasoned:

> Plaintiff has the right to have that which it lawfully produces freely bought and sold without restraint or interference. It is a right which attaches to its product, to a particular thing-as an article of commerce-and it continues only so long as the commodity to which the right applies retains its separate identity. If in the course of trade that commodity is combined with other things in the process of the manufacture of a new commodity, the trade right in original part as an article of commerce is necessarily gone. . . . The situation as to plaintiff is no different than if plaintiff sold milk, from which casein is made, to its customers and they in turn made their own casein fibers which they might thereafter use in a way to infringe defendant's patents, or in a way which would not.

Id. at 293-94, 297.

The Synopsys court ultimately distinguished Aralac and also noted that the plaintiff who had asserted jurisdiction had a duty to indemnify its customers, which duty does not exist in the case at bar. Therefore, according to that court, a justiciable controversy existed. Synopsys, Inc., 343 F. Supp. 2d at 889-90.

Unlike the court in Synopsys, this Court finds the Aralac reasoning applicable. Plaintiff sells non-infringing chemicals to customers. Those customers combine the chemicals to produce and apply adhesive foam. All of the claims of the '327 patent are method claims and generally relate to the application of foamable polymer adhesives to reinforce building roof structures against hurricane force winds. Under these circumstances, cease and desist letters sent to Plaintiff's potential customers by Defendant regarding the method claims of the '327 patent do not sustain an actual case or controversy between Plaintiff and Defendant. See Aralac, 166 F.2d at 297 ("To hold otherwise would be to say that a person . . . who furnishes any commercial resin

to a manufacturer for use in a process to make a plastic . . . which infringes the patent of another, may bring a declaratory judgment action . . . to test the validity of the patent.").

Since the Court has concluded that no evidence here indicates an indemnification agreement exists or that case law would require Plaintiff to indemnify its customers under the evidence in this case, the Court now turns to Plaintiff's alternative argument that Section 312 of the Uniform Commercial Code, codified in North Carolina law at N.C Gen. Stat. § 25-2-312, provides for a warranty from Plaintiff to its customers for the goods Plaintiff sells. N.C. Gen. Stat. § 25-2-312(c) provides, "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like but a buyer who furnishes specifications to the seller must hold the seller harmless against any such claim which arises out of compliance with the specifications." Plaintiff contends if its goods–the materials it sells– fail, then Plaintiff could be held liable under the statute. Plaintiff's argument and application of § 25-2-312 is misplaced. The goods Plaintiff sells are the materials to make the foam, not the foam itself nor the method to make the foam. The '327 patent describes a method to make the foam and does not contain a patent on the goods, or materials, used to make the foam. Indeed, if the evidence were to show that Plaintiff's customers furnish specifications to Plaintiff, such as specifications that the materials be of the sort that can be combined to make the foam described in the '327 patent, then its possible that Plaintiff would be held harmless or not liable to its customers under N.C. Gen. Stat. § 25-2-312. Considering all the circumstances in this case and the evidence before the Court, the Court does not see how N.C Gen. Stat. § 25-2-312 sufficiently shows a realistic threat of indemnification for Plaintiff.

Notably, Plaintiff's own brief in opposition to the pending motion clearly demonstrates in footnote three on page ten that indemnification to its customers is only a mere possibility, and Plaintiff markedly stops short of admitting that its argued bases for liability would hold up in court. Plaintiff's brief states, "Barnhardt is not conceding that indemnity claims from Barnhardt's customers to Barnhardt for infringement of the '327 patent would ultimately be valid." The Court finds the potential for suit from customers for indemnification from Plaintiff, without an agreement or other legal support to show that such a suit might be viable, is little more than a "hypothetical state of facts" that the Supreme Court unequivocally frowned upon in MedImmune. MedImmune prohibits this Court from issuing an advisory opinion to resolve this hypothetical situation. See also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297-99 (Fed. Cir. 2009) ("The residual possibility of a future infringement suit based on [an alleged infringer's] future acts is simply too speculative [a basis for jurisdiction].") (quoting Benitec Australia, Ltd. v. Nucleonics, Inc., 495 F.3d 1340, 1346 (Fed.Cir. 2007)).

The Court acknowledges that this Order addresses the issue of whether Plaintiff is liable to its customers for purposes of analyzing subject matter jurisdiction between the two parties at bar. The Court, however, expressly declines to decide that issue as it remains between Plaintiff and its customers. During the status conference where the parties provided brief oral argument on this motion, the Court questioned Plaintiff's counsel as to whether it might be more appropriate for Plaintiff to file a declaratory judgment action against its customers to have a court declare Plaintiff not liable for its customers' infringement under any indemnification agreement, actual or implied, or any other theory. Plaintiff's counsel declared that option would be bad for Plaintiff's business. Indeed, that is the nature, and often unavoidable consequence, of a declaratory judgment action. While the Court sympathizes with the dilemma that places upon

Plaintiff and its business practices, Plaintiff's argument to this Court in support of a case or controversy presupposes that the customers would sue Plaintiff, which would also indicate a bad sign for Plaintiff's business. The benefit, however, for the plaintiff in such cases is to decide against whom and where to file suit. The Court's ruling in this case should not be construed as deciding the issue of whether Plaintiff might be liable to its customers because of the limited record that could be more fully developed if those parties were actually before the Court. Nevertheless, the Court is satisfied that the record is sufficient to resolve that issue for the sole purpose of determining whether a justiciable Article III controversy exists between this Plaintiff and this Defendant.

### ANALYSIS OF JURIDICTION FOR UNFAIR COMPETITION CLAIM

Finally, in opposition to Defendant's motion to dismiss all of Plaintiff's claims, Plaintiff contends this Court has diversity jurisdiction over Plaintiff's claims under state law for unfair competition in violation of N.C. Gen. Stat. § 75-1.1 et seq. Defendant disagrees and contends that Defendant cannot satisfy the jurisdictional requirement that its damages exceed $75,000. See 28 U.S.C. § 1332(a)(1). It is well-settled that dismissal of a complaint is appropriate where it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount . . . ." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). Although Plaintiff's Complaint provides, "As a result of ITW's actions in violation of North Carolina General Statute §75-1.1, Barnhardt has been injured in an amount which cannot be presently calculated," the Court cannot say, to a legal certainty, at this time that the damages sought in this claim do or do not satisfy the jurisdictional threshold of $75,000.

Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1945 (2009) (citing Arbaugh v. Y & H Corp.,

546 U.S. 500, 514 (2006)). "[I]f the underlying facts remain the same and it is subsequently determined that the jurisdictional minimum was not met even at the time the complaint was filed, there is no diversity jurisdiction. The subsequent revelation that the jurisdictional minimum has not been met is not a subsequent change that can be ignored." 15-102 Moore's Federal Practice - Civil § 102.104 (citing Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 217-218 (3d Cir. 1999); Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 8 (1st Cir. 1995); Tongkook America, Inc. v. Shipton Sportswear Co., 14 F.3d 781, 785-786 (2d Cir. 1994); Jones v. Knox Exploration Corp., 2 F.3d 181, 183 (6th Cir. 1993)).

Accordingly, the Court will deny this portion of Defendant's motion to dismiss without prejudice should it appear to a legal certainty that amount in controversy for this claim at the time the Complaint was filed was less than $75,000.

## CONCLUSION

Accordingly, under all the circumstances of this case and in light of the applicable case law, there is currently no "substantial controversy, between [Plaintiff and Defendant], of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, 549 U.S. at 127 (quoting Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

IT IS THEREFORE ORDERED that Defendant's motion to dismiss for lack of subject matter jurisdiction (Doc. No. 19) is GRANTED in part and DENIED WITHOUT PREJUDICE in part. IT IS FURTHER ORDERED that pursuant to this ruling that the Court lacks subject matter jurisdiction over the patent claims, the Claim Construction briefs filed by the parties (Docs. Nos. 30, 31) are now moot. The parties shall proceed as set forth in the Pretrial Order and Case Management Plan (Doc. No. 23) governing this dispute.

IT IS SO ORDERED.

Signed: April 16, 2010

Frank D. Whitney
United States District Judge